Sinking Fund — Flood Control Money
The issuance, approval and delivery of bonds under ArticleX, Section 35, Oklahoma Constitution, creates a sinking fund as provided in Article X, Section 28, Oklahoma Constitution, and it is not necessary that a levy be made to bring the sinking fund into existence. The State Treasurer must pay monies received as benefits of the Federal Flood Control Act of County Treasurers of counties wherein is located a federal flood control project at the end of each fiscal year, and said County Treasurer must pay 1/4 of that sum to the county sinking fund, if there be any indebtedness. The Attorney General is in receipt of your letter of February 20, 1968, inquiring, "(1) Does the issuance, approval and delivery of the bonds under Article X, Section 35 Oklahoma Constitution, create a sinking fund as provided in Article X, Section 28 of the Constitution, or is same created when the tax levy is made as authorized in Section 35? "(2) Is the County Treasurer required to credit one-fourth (1/4) of the flood control money received by him under 62 O.S. 204 [62-204] (1961), to the sinking fund of the county?" Article X, Section 28
Oklahoma Constitution, reads: "Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay." From the language cited above it is clear a county must create a sinking fund when it incurs any indebtedness. The Oklahoma Supreme Court held in Sublett v. City of Tulsa, Okl., 405 P.2d 185, that, "In Coppedge et al. v. Depew Twp., Creek County et al., 109 Okl. 117, 234 P. 769, the syllabus states: `Bonded indebtedness is incurred, within the meaning of section 26, article 10, of the Constitution, when the bonds of the township are voted, issued, approved, and delivered, and not when the election is held at which they are submitted.' citations" This case indicates that the bonded indebtedness arises when the bonds of a county are delivered according to the provisions of the Oklahoma Constitution. The bonds referred to herein have been delivered and the indebtedness may be considered incurred by the county. We refer you to the case styled Okmulgee Co. Excise Board v. St. Louis-San Francisco Railway Co., Okl., 305 P.2d 298. In that case the county incurred an indebtedness on March 23, 1955 of $300,000 for road and bridge bonds. There are statutes that require the County Treasurer to deposit monthly 40% of the county's apportionment from commercial vehicle and bus mileage tax and 5% of the county's apportionment from automotive and gasoline excise tax into the county's sinking fund to be used for the payment of principal and interest on the bond issue. The County Excise Board made the levy without including the months of March, April, May and June of 1955. Although it is not expressly stated in the case, the implication is the Excise Board felt the County Treasurer's apportionment would not begin until after the beginning of the new fiscal year July 1955), the same date being the time for the initial levy for sinking fund purposes. The case holds: "The protestee argues that the above statutes, and the cases construing them, do not require the apportionment of such funds immediately upon the county becoming indebted for road bonds, but that the statutes only require that the excise board of the county provide for the use of such funds of an annual basis for the retirement of such bonds in existence at the beginning of the fiscal year. "This argument would have merit if the county highway cash fund were a fiscal year fund, but it is not. Appropriations from such fund are requested and made monthly, after the receipt of moneys making up such fund, and not on an annual basis. We think that the statutory requirement is clear that upon the county becoming obligated for road bonds, whether such occurs at the beginning, or during the fiscal year, the funds in question are no longer available for appropriation, but must be deposited in the county sinking fund." Therefore, it is the opinion of the Attorney General that your first question be answered as follows: The issuance, approval and delivery of bonds under Article X, Section 35
Oklahoma Constitution, creates a sinking fund as provided in Article X, Section 28 Oklahoma Constitution, and it is not necessary that a levy be made to bring the sinking fund into existence. As to your second question, 62 O.S. 204 [62-204] (1961), reads in part: "The State Treasurer of Oklahoma is hereby authorized and required to distribute monies now in his hands, or hereafter received by him under the provisions of Section 7 of the Flood Control Act of Congress, approved August 18, 1941, as amended, in the following manner: "Such monies shall be distributed by the State Treasurer at the end of each fiscal year to the County Treasurers of counties wherein is located a Federal flood control project, and shall be by the said County Treasurer of each such county distributed as follows: one-fourth (1/4) to the county sinking fund, except that if there be no county bonded indebtedness said one-fourth (1/4) shall be apportioned to the general fund of the county to be used for any lawful general fund purpose as and in the manner provided by law; . . ." You will note that this fund is distinguishable from that discussed in Okmulgee County Excise Board v. St. Louis-San Francisco Railway Company, supra. These funds are distributed by the State Treasurer at the end of each fiscal year. But this distinction does not destroy the principle present in Okmulgee County Excise Board v. St. Louis-San Francisco Railway Company, supra; it merely adjusts to that principle. The language in that case indicates that where the fund is a fiscal year fund the holding might be different, but the principle that when apportionment is due it must be paid, whether it be the fiscal year or monthly, is sound and stands in the instant situation. It is also clear from the language of the statute that it is mandatory upon the County Treasurer to pay this to the sinking fund as well as the duty of the State Treasurer to pay the County Treasurer his county's share. Therefore, in answer to your second question, it is the opinion of the Attorney General that: The State Treasurer must pay monies to County Treasurers of counties wherein is located a federal flood control project and said County Treasurer must pay one-fourth (1/4) of that sum to the county sinking fund, if there be one. (Sam I. Hellman)